UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ICORE MIDCO INC. and
ICORECONNECT INC.,

    Plaintiffs,

v.                                                    Case No: 6:25-cv-600-JSS-LHP

PIGI SOLUTIONS, LLC and JOHN
SCHNELLER,

    Defendants.
_____/

## ORDER

Plaintiffs, iCore Midco, Inc. (iCore Midco) and iCoreConnect, Inc. (iCoreConnect), move for a temporary restraining order and a preliminary injunction against Defendants, PIGI Solutions, LLC (PIGI Solutions) and John Schneller. (Dkt. 9.) Defendants oppose the Motion. (Dkt. 16.) On April 16, 2025, the court held an evidentiary hearing on the motion. (Dkt. 28.) For the reasons outlined below, the court denies the motion.

## BACKGROUND

According to the complaint, iCore Midco is a cloud-based software and technology company that provides cloud-based software for the healthcare sector. (Dkt. 1 ¶¶ 1, 10.) iCoreConnect is the parent company of iCore Midco. (*Id.* ¶ 2.) Robert McDermott is the chief executive officer for Plaintiffs. (Dkt. 9-1 at 2.) John Schneller was a member of iCoreConnect's board of directors from 2020 to 2022.

(Dkt. 16-3 at 2.) Peter Wright is the managing member and authorized representative of PIGI Solutions, as well as the managing director of PartnerCap Securities, LLC (PCS). (Dkt. 16-2 at 2.)

On June 16, 2022, iCoreConnect entered into a finder's fee agreement with PIGI Solutions in which PIGI Solutions agreed to "assist[] [iCoreConnect] in consummating an initial business combination with [one or more companies.]"[1] (Dkt. 1-2 at 2.) During the hearing, Mr. McDermott testified that the finder's fee agreement came about because iCoreConnect was "looking for a merger, and the board made a committee, [and] put John Schneller at the head of that committee, to find a possible choice or a company that could help us do a reverse merger." (Mot. Hr'g Tr. 49:2–5.) Mr. McDermott, as iCoreConnect's chief executive officer, signed the agreement on behalf of the company, and Mr. Wright signed on behalf of PIGI Solutions. (Dkt. 1-2 at 5.)

On January 3, 2023, iCore Midco entered into a merger agreement and plan of reorganization with FG Merger Corp. and a wholly owned subsidiary FG Merger Sub Inc. (Dkt. 1 ¶ 26.) The reverse merger was completed when FG Merger Sub merged with and into iCore Midco, with iCore Midco surviving as a wholly owned subsidiary of FG Merger Corp. on August 23, 2023. (Dkt. 1 ¶ 27.) As part of the merger, FG

---

[1] Plaintiffs contend that iCore Midco Inc., not iCoreConnect Inc., signed the finder's fee agreement. (Dkt. 9 at 4; Mot. Hr'g Tr. 82:21–83:8.) A review of the finder's fee agreement shows that an entity named "iCoreConnect, Inc." entered into the finder's fee agreement. (Dkt. 1-2 at 5.) Therefore, the court will refer to this entity when referencing the party that signed the finder's fee agreement without deciding whether Plaintiffs signed the agreement.

Merger Corp. changed its name to iCoreConnect and Merger Sub changed its name to iCore Midco. (*Id.*).

After the merger agreement was signed but before the merger was completed, on May 18, 2023, iCoreConnect, Partner Capital Group, and PCS entered into a broker-dealer agreement. (Dkt. 26-1 at 2.) Mr. Wright signed the agreement on behalf of Partner Capital Group and PCS as the managing director of PCS, and Mr. McDermott signed the agreement as the chief executive officer of iCoreConnect. (*Id.* at 10.) Mr. Wright maintains that the broker-dealer agreement was signed when a potential investor became interested in investing in iCoreConnect. (Dkt. 16-2 at 4–5.) According to Mr. Wright, any investment-related work involving securities would need to be performed through PCS instead of PIGI Solutions because PIGI Solutions was not a registered broker-dealer with the Financial Industry Regulatory Authority (FINRA), but his other company, PCS, was duly registered with FINRA. (*Id.*) Plaintiffs assert that they discovered that PIGI Solutions was not a duly registered broker or dealer with FINRA in approximately May 2024. (Dkt. 1 ¶ 32.)

On August 21, 2023, PIGI Solutions sent Mr. McDermott an invoice for $2 million, the fee owed under the finder's fee agreement. (Dkt. 1-2 at 2; Dkt. 1-3 at 2.) Plaintiffs claim that in or around November 2023, Mr. Wright disclosed for the first time that Mr. Schneller was entitled to fifty percent of PIGI Solutions' finder's fee compensation. (Dkt. 1 ¶ 31.) Mr. Schneller wanted to be compensated for his work on behalf of iCoreConnect. (Dkt. 16-3 at 5–6; Mot. Hr'g Tr. 16:12–17.) Mr. Schneller asked iCoreConnect to pay him monthly as a consultant, but the board declined, and

he resigned. (Dkt. 16-3 at 4–5.) Defendants contend that Plaintiffs knew about Mr. Schneller's agreement to receive fifty percent of PIGI Solutions' finder's fee because Mr. Schneller disclosed to the board several times that PIGI Solutions would pay him, and the payment was central to his decision to resign from the board. (Dkt. 16-3 at 4–5; Mot. Hr'g Tr. 41:4–42:5.)

By December 2023, Plaintiffs had not paid PIGI Solutions' finder's fee. (Dkt. 1 ¶ 34.) As a result, on December 26, 2023, Mr. McDermott signed a subordinated note and loan agreement granting PIGI Solutions a security interest in all of iCoreConnect's personal property. (*Id*. ¶¶ 34–38; Dkt. 1-5; Dkt. 1-6.) On October 1, 2024, iCoreConnect entered into a forbearance agreement with PIGI Solutions. (Dkt. 1-9.) As of April 4, 2025, Plaintiffs represent that they made payments totaling $440,778.17 towards the finder's fee. (Dkt. 1 ¶ 43.) On March 10, 2025, PIGI Solutions sent Plaintiffs two notices of secured party's sale of personal property, evidencing an intent to sell Plaintiffs' assets via public auction to pay $2,434,243 in principal, accrued interest, legal costs, and fees owed under the finder's fee agreement. (*Id*. ¶ 44; Dkt. 1-10 at 2–6.)

Plaintiffs seek emergency injunctive relief to enjoin PIGI Solutions from conducting the auction. (Dkt. 9.) They sued Defendants in this action alleging violations of Section 15(a) of the Exchange Act for unregistered broker or dealer activity (Count 1), the Florida Securities and Investor Protection Act (FSIPA) for unregistered dealer activity (Count 2), Section 10(b) and Rule 10b-5 of the Exchange Act for fraud in connection with the purchase and sale of securities (Count 3), the

FSIPA for fraud in connection with the purchase and sale of securities (Count 4), fraud in the inducement (Count 5), breach of fiduciary duty (Count 6), defamation (Count 7), tortious interference with a business relationship (Count 8), and declaratory relief (Count 9).  (Dkt. 1 ¶¶ 57–132.)

## APPLICABLE STANDARDS

To obtain a preliminary injunction, a party must make four showings: "(1) a substantial likelihood of success on the merits[,] (2) that irreparable injury will be suffered if the relief is not granted[,] (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant[,] and (4) that entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  Because a "preliminary injunction is an extraordinary and drastic remedy," courts should not enter one "unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quotation and citation omitted).

"Failure to establish even one of the elements is fatal to a motion for a preliminary injunction." *MC3 Invs. LLC v. Loc. Brand, Inc.*, 661 F. Supp. 3d 1145, 1158 (N.D. Fla. 2023) (citing *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001), and *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)).  The first factor, a substantial likelihood of success on the merits, "'is generally the most important.'" *Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 889 (11th Cir. 2023) (quoting *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020)).  The

existence of a factual conflict or complex questions of law may raise doubt about the probability of the moving party's likelihood of success on the merits. *See Delivery Kick Holdings, Inc. v. RJ Brooksher LLC*, No. 8:24-cv-1506-KKM-NHA, 2025 WL 896002, at *3 (M.D. Fla. Mar. 24, 2025).

## ANALYSIS

Plaintiffs seek to enjoin PIGI Solutions from conducting a public auction of Plaintiffs' assets. (Dkt. 9.) Plaintiffs contend that they have shown a substantial likelihood of success on the merits of Counts 1-5 and 9 of the complaint, and they have fully satisfied the remaining requirements for obtaining injunctive relief. (Dkt. 9 at 8.) Plaintiffs have not clearly established a substantial likelihood of success on the merits of any claim. The court thus denies Plaintiffs' motion. *See MC3 Invs.*, 661 F. Supp. 3d at 1158.

**A. Section 15(a) of the Exchange Act and FSIPA (Counts 1 and 2)**

Plaintiffs assert that they have established a substantial likelihood of success on the merits as to the unregistered broker-dealer activity claims brought under Section 15(a) of the Exchange Act (Count 1) and the FSIPA (Count 2). (Dkt. 9 at 10–17.) Section 15(a) of the Exchange Act makes it unlawful for "any broker" to use interstate commerce to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless the broker is registered with the [United States Securities and Exchange] Commission. *See* 15 U.S.C. § 78o(a)(1). Moreover, "[e]very contract made in violation" of the Exchange Act "shall be void." 15 U.S.C. § 78cc.

Generally, a broker is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Courts have considered multiple factors to determine "whether a person qualifies as a broker under Section 15(a)" because the Exchange Act does not define "'effecting transactions' nor engag[ing] in the business.'" *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011). Specifically, courts consider whether a person "(1) works as an employee of the issuer, (2) receives a commission rather than a salary, (3) sells or earlier sold the securities of another issuer, (4) participates in negotiations between the issuer and an investor, (5) provides either advice or a valuation as to the merit of an investment, and (6) actively (rather than passively) finds investors." *Id.* (citing *SEC v. Hansen*, No. 83 CIV 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)).

Additionally, the FSIPA expressly prohibits "dealer[s] or associated persons" from selling securities in Florida "unless the person is registered with the [Florida Office of Financial Regulation] as a dealer or as an associated person of a dealer pursuant to [the FSIPA]." Fla. Stat. § 517.12(1). Under the FSIPA, a "dealer" is generally "a person, other than an associated person of a dealer, that engages, for all or part of the person's time, directly or indirectly, as agent or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Fla. Stat. § 517.021(10)(a).

With respect to the factors outlined in *SEC v. Hansen*, No. 83 CIV 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984), Plaintiffs maintain that PIGI Solutions acted as an unregistered broker-dealer because PIGI Solutions did not work as an

employee of Plaintiffs and contracted to receive commission-based compensation rather than a fixed salary. (Dkt. 9 at 16.) Plaintiffs further maintain that PIGI Solutions provided advice concerning the terms of the merger and actively sought third parties to purchase iCore Midco's stock or to invest in the company. (*Id.* at 15–16; Mot. Hr'g Tr. 53:1–55:4.) PIGI Solutions is not an employee of Plaintiffs. (Dkt. 16-2 at 2, 4–5.) Nevertheless, Defendants dispute whether Plaintiffs have put forth sufficient evidence establishing that PIGI Solutions sold the securities of another company, participated in negotiations between Plaintiffs and an investor, gave broker-dealer advice concerning potential merger terms, and actively sought investors to invest in iCore Midco. (Dkt. 16 at 11–16; Dkt. 16-2 at 4–10; Mot. Hr'g Tr. 32:10–34:22.)

To support their contention that PIGI Solutions acted as an unlicensed broker-dealer, Plaintiffs submitted the following evidence along with Mr. McDermott's declaration: (1) emails sent between Mr. McDermott and Mr. Wright on December 7, 13, and 14, 2022, (Dkt. 9-1 at 8–10, 40–42), (2) an email sent from Mr. Wright to Mr. McDermott on May 11, 2023, (*id.* at 38–39), (3) emails sent from Mr. Schneller to Mr. McDermott and Mr. Wright on May 30, 2022, (*id.* at 12–13), (4) and an email sent from Mr. Wright to Mr. McDermott and another individual on April 18, 2023 (*id.* at 53–54).[2] Except for the April 18, 2023 emails, these comprise internal emails between

---

[2] Plaintiffs also submitted a February 16, 2023 email from Mr. Wright to an unidentified party that Mr. Wright was trying to introduce Mr. McDermott to (Dkt. 9-1 at 56). Because the court does not have the context of this email and Plaintiffs do not explain how this email evidences unlicensed broker dealer activity, the court does not consider it.

iCoreConnect and PIGI Solutions. After reviewing the emails and considering the testimony and argument at the hearing, the court cannot conclude that Plaintiffs have met their burden of establishing that PIGI Solutions was acting as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act or the FSIPA.

Plaintiffs do not provide legal authority supporting that the internal emails, which did not include a potential third-party investor, evidence PIGI Solutions acting as a broker based on the *Hansen* factors or as a dealer under the FSIPA. Defendants maintain that the emails show PIGI Solutions acting as a finder internally advising its client. (Mot. Hr'g Tr. 24:11–25:8, 32:13–33–6.) Mr. McDermott contends that through the April 18, 2023 email, PIGI Solutions introduced Mr. McDermott to a bank representative and recommended that iCore Midco "go through a certain investment banking firm's checklist for exchange listing requirements and other deal closing conditions." (Dkt. 9-1 at 5.) Plaintiffs fail to explain how an internal investment bank recommendation weighs in favor of finding that PIGI Solutions acted as a broker based on the *Hansen* factors or as a dealer under the FSIPA. The remaining emails presented to the court were sent after iCoreConnect signed the broker-dealer agreement with PCS, and Defendants maintain that Mr. Wright was acting on behalf of PCS in these communications. (Dkt. 9-1 at 16–23, 25–26, 28–36, 45, 47–52; Dkt. 16-2 at 4–5.)

As Defendants contend (Dkt. 16 at 7–8, 15–16), the finder's fee agreement expressly limited PIGI Solutions to an advisory role that did not involve broker-dealer activity as the agreement states:

> [PIGI Solutions] is not authorized to act as agent for ICCT, nor act on behalf of ICCT, nor bind ICCT in any manner . . . . The parties hereto agree that the Finder's function with respect to the subject matter contemplated by this [a]greement is to assist ICCT in consummating an initial business combination with [a company].

(Dkt. 1-2 at 2.) Defendants assert that PIGI Solutions acted within the confines of this agreement and that any broker-dealer work was performed through PCS, not PIGI Solutions, for which iCoreConnect paid PCS's full $600,000 invoice for the broker-dealer services provided under the contract. (Mot. Hr'g Tr. 21:19–22:23, 32:10–35:4.) In contrast, Plaintiffs maintain that Mr. Wright, acting on behalf of PIGI Solutions, provided services and activities that exceeded the scope of the finder's fee agreement and required broker-dealer registration, which PIGI Solutions did not have. (*Id.* at 12:4–23.) Given that the parties have not participated in discovery, and considering the competing evidence and declarations of Mr. McDermott and Mr. Wright, the court cannot conclude that Plaintiffs have established a substantial likelihood of success on the merits as to Counts 1 or 2. *See Delivery Kick Holdings*, 2025 WL 896002, at *4 (denying a motion for preliminary injunction after determining that the moving party failed to clearly establish a substantial likelihood of success on the merits due to "significant factual disputes" presented in the parties' competing declarations); *B&G Equip. Co. v. Airofog USA, LLC*, No. 8:19-cv-403-T-36AEP, 2019 WL 2537792, at *5 (M.D. Fla. June 20, 2019) (adopting a report and recommendation denying a motion for preliminary injunction because the parties' conflicting declarations prevented the moving party from establishing a substantial likelihood of success on the merits).

## B. Fraud (Counts 3, 4, and 5)

Plaintiffs argue that they have established a substantial likelihood of success on the merits for the fraud claims brought under Section 10(b) and Rule 10b-5 of the Exchange Act (Count 3), the FSIPA (Count 4), and Florida law (Count 5). (Dkt. 9 at 17–20.)

Section 10(b) of the Exchange Act makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [United States Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 of the Exchange Act makes it unlawful

> (a) [t]o employ any device, scheme, or artifice to defraud,
> (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To prove a claim for securities fraud in violation of Section 10(b) or Rule 10b-5, a plaintiff must establish the following six elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss." *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1301–02 (11th Cir. 2015) (quoting *Mizarro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir.

2008)). In this context, scienter means a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

Similarly, the FSIPA states that "[i]t is unlawful . . . for a person . . . [i]n connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security. . . directly or indirectly[] [t]o employ any device, scheme, or artifice to defraud . . . ." Fla. Stat. § 517.301(1)(a). "[A] securities fraud claim under [the FSIPA] is nearly identical to a securities fraud claim under Rule 10b[-]5 of the related federal law." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 2001). "As this is the case, Florida courts will look to interpretations of the federal securities laws for guidance in interpreting Florida's securities laws." *Id*. As to fraudulent inducement, Florida law requires four elements: "(1) a false statement concerning a material fact[,] (2) the representor's knowledge that the representation is false[,] (3) an intention that the representation induce another to act on it[,] and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Plaintiffs claim that in the finder's fee agreement, PIGI Solutions falsely and materially represented that it is a registered member of FINRA, and Defendants fraudulently and materially omitted that Mr. Schneller was entitled to half of the finder's fee agreement compensation. (Dkt. 9 at 19–20; Mot. Hr'g Tr. 15:3–16, 50:5–51:24.) Defendants maintain that PIGI Solutions' representation that it was registered with FINRA was not fraud and instead a mere oversight, and that Mr. McDermott

knew that Mr. Schneller was entitled to compensation under the finder's fee agreement. (Dkt. 16 at 3–6; Dkt. 16-3 at 4–6; Mot. Hr'g Tr. 41:22–42:25.) Defendants further maintain—and Mr. McDermott did not dispute—that Mr. McDermott signed the loan forbearance agreement after he learned that PIGI Solutions was not registered with FINRA. (Mot. Hr'g Tr. 69:12–23.)

Even if Defendants made material misrepresentations and omissions, Plaintiffs have not put forth argument, evidence, or legal authority supporting the contention that (1) the alleged misrepresentations and omissions were made with scienter as required for Counts 3 and 4 or (2) proximately caused Plaintiffs to suffer economic loss or an injury as required for all the fraud counts. *See Brophy*, 781 F.3d at 1301–02; *Butler*, 44 So. 3d at 105; *Ward*, 777 So.2d at 1147. Thus, the court cannot conclude that Plaintiffs have clearly established a substantial likelihood of success on the merits as to Counts 3, 4, or 5.

### C. Declaratory Judgment (Count 9)

Plaintiffs assert that they have established a substantial likelihood of success on the merits as to their declaratory judgment claim. (Dkt. 9 at 10–17.) According to the complaint, Plaintiffs seek an order declaring that PIGI Solutions operated as an unregistered broker in violation of the Exchange Act and the FSIPA and made false misrepresentations and omissions of material fact in connection with the purchase and sale of securities in violation of the Exchange Act, the FSIPA, and Florida law. (Dkt. 1 ¶¶ 125–132.) As Plaintiffs failed to establish a substantial likelihood of success on the merits for these claims as discussed above, the court finds that Plaintiffs failed to

establish a substantial likelihood of success on the merits as to Count 9. *See Am. Dental Ass'n v. Cigna*, 605 F.3d 1283, 1296 n.7 (11th Cir. 2010) (concluding that a claim for declaratory relief as to statutory violations failed for the same reasons that the claims for the violations failed).

## CONCLUSION

Accordingly, Plaintiffs' Amended Time-Sensitive Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction (Dkt. 9) is **DENIED**.

**ORDERED** in Orlando, Florida, on April 23, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record